15950

KILPATRICK v. BROTHERHOOD OF RAILROAD TRAINMEN INSURANCE DEPARTMENT

(42 S. E. (2d) 891)

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, for Appellant, cite:

*Messrs. Thames & Arrowsmith,* of Florence, for Respondent, cite:

May 26, 1947.

BAKER, CJ.: This action was brought by respondent, the wife of insured, who has since remarried, as the beneficiary of a policy of life insurance issued by appellant, a fraternal benefit association, upon the life of William Eugene Dennis, who died of pulmonary tuberculosis at the Florence-Darlington Sanatorium on May 25, 1944. Application for in-

surance was made on October 1, 1943, and was approved soon thereafter. The certificate of insurance was delivered through the mails, the effective date being October 1, 1943. The amount of insurance was $1,000.00, and it was issued on the basis of the information contained in the application and without medical examination.

There was only one application for insurance in this case, applying for two classes of insurance, *viz.,* life and endowment insurance, and accident and health insurance, with benefits for loss of limb, etc. Two "certificates" of insurance, bearing the same date, covering the two types of insurance mentioned, were issued by appellant and forwarded to the insured under the same cover at the same time. Attached to the accident and health certificate was a copy of the sole application for all insurance. Nothing was attached to the life policy involved in this action, but the insured at all times had a copy of his application for the combination insurance, and it is in evidence in this case as a part of the health and accident certificate, which was introduced to show that such copy of the application was at all times in the insured's possession. The significance of the foregoing will be apparent later herein.

Under the health and accident certificate, the insured, within approximately sixty days from its receipt by him (although effective as of October 1, 1943), gave the appellant notice of his illness, and upon receiving the appellant's form for filing a claim, filled same out, it being dated January 4, 1944, and received by appellant on January 18, 1944, showing that he had been confined in Florence-Darlington Sanatorium since December 19, 1943, suffering from tuberculosis. The appellant immediately commenced an investigation in reference thereto, and learned from Dr. E. C. Hood, the physician in charge, in a letter from him dated February 12, 1944, received by appellant on February 15, 1944, that the insured's case had been diagnosed as a far advanced bilateral pulmonary tuberculosis; and further, that

within "the past year," a brother of the insured had died in this same sanatorium from tuberculosis, which fact was known by the insured as he had visited his brother on several occasions at the sanatorium, and had been advised to have his chest x-rayed. Upon further investigation, the appellant undertook to cancel the life certificate (the basis of this action) as of March 3, 1944, and following the insured's death in May, 1944, refused payment of the benefit under said certificate. We will go more into detail as to the facts in discussing the issues involved.

Action on the life certificate was commenced within one year of date of issuance of the policy. The case was tried before the Judge of the Civil Court of Florence, and a jury, and resulted in a verdict in favor of the respondent for the face amount of the policy. Motions for non-suit, for direction of verdict, and for judgment *non obstante veredicto,* and failing in the latter, for a new trial, were seasonably made by the appellant.

In the view we take of this case it is probably unnecessary, although appropriate to first consider respondent's additional ground for affirmance of the judgment, that is whether the appellant, by reason of the provision of Section 7987-1, Code of 1942, is precluded from rescinding the contract of insurance on account of fraudulent statements contained in the application for the insurance. That section requires insurance companies and associations to deliver with each policy of insurance over $500.00 in amount, a copy of the application made by the insured, in default of which no defense shall be allowed on account of anything contained in or omitted from such application. Respondent contends that, since a copy of the application was not physically attached to the certificate of life insurance, appellant is precluded from taking advantage of false statements in the application. The presiding Judge held that the purpose of the statute was to give the insured the opportunity of knowing what was contained in the ap-

plication, which purpose was subserved by the furnishing of the insured with a copy when the two certificates were contemporaneously delivered, and that it would be too strained a construction of the statute to hold in this case, that such defense was foreclosed by reason of the fact that a copy of the application for the combination insurance was not physically attached to the certificate representing the life insurance contract or certificate. To hold otherwise would be to sacrifice substance for form, and we adopt the trial Judge's constuction of the statute as applied to the facts of this case.

We now come to one of the important questions raised by the appeal: Was the policy voidable by reason of false statements in the application for the insurance, if such false statements were material to the risk?

Insured's written application, upon which the certificate was issued, and which was a part of the contract, provided that the statements therein were "the basis of the contract between said Brotherhood * * * and myself." He further agreed that he had read the questions and answers, that they were full, complete and true, and that the "answers * * * shall each and all be treated as material to the risk and form a part of the certificate" of insurance issued pursuant thereto. In response to question No. 21 of the application, the insured represented that none of his relatives had ever suffered from tuberculosis. The testimony is undisputed that this question was asked, and answered in the negative. The fact was that insured's brother had died of tuberculosis a little more than six months prior thereto at the same institution where the insured later died, and the insured had visited his brother there frequently and it had been strongly recommended to him by the doctor in charge of that institution that he himself be examined and x-rayed. There is likewise no dispute that a true answer to this question was material to the risk. It is made so by the application. The agents of the appellant who took the application

testified that they would not have taken same if they had known there was tuberculosis in the insured's family. The medical director of the appellant testified that if he had known that the insured had a brother who had died of tuberculosis, the application would not have been approved without further information, and probably a medical examination.

If there was no waiver of this condition, it follows that the contract was rendered voidable by the false representation of the insured in this respect. It should be kept in mind that we are here dealing with a representation and not a warranty. As to the difference, see *Kizer v. Woodmen of the World,* 177 S. C. 70, 78, 180 S. E. 804.

Respondent's attorneys state in their brief that the only waiver on the part of appellant upon which they rely, is that the appellant accepted premiums after knowledge of the death of the insured's brother allegedly from tuberculosis, and also accepted premiums on the policy in question after insured was confined in the sanatorium with the same dreaded disease, so we confine our consideration to the testimony as to these matters.

Appellant's first knowledge of the fact that the insured's brother had died of tuberculosis was by letter from Dr. E. C. Hood, dated February 12, 1944. (We are disregarding the testimony of the Uncle of the insured who testified that he notified the agents of appellant before they went to see the insured to solicit him for insurance that a brother had recently died of tuberculosis, for the reason that if it be conceded that these agents were the agents of the parent association or organization, the policy of insurance should be defeated on the ground that the insured and the agents participated and fraudulently procured the insurance, unless, of course, there was a waiver on the part of the appellant. *Eskew v. Life Insurance Co. of Va.,* 190 S. C. 515, 3 S. E. (2d) 251.) The appellant, upon the receipt of this letter again communicated with Dr.

Hood, who on February 21, 1944, wrote to the appellant giving the name of the insured's brother who had died. Thereupon the appellant wrote to the insured concerning the inception of his illness, and when a reply was not received, and on March 3, 1944, cancelled the insured's certificate and notified him of its action. However, the monthly premiums were duly accepted through the regular channel on February 29, 1944, for the month of March, 1944, and on March 30, 1944, for the month of April, 1944, but the monthly premium on the life policy when tendered for the month of May, 1944, was refused. Premium receipts for dues were, for convenience of members, left in the hands of a Mr. Weeks, a hardware merchant, in Florence. Receipts for March premiums were sent to him on February 15th, and for April on March 15th, that is, fifteen days in advance of time for payment. The last receipt was therefore prepared and mailed to Mr. Weeks twelve days after the appellant undertook to cancel the policy, and delivered to the respondent or her agent twenty-six days after the cancellation. Although the last payment of premium was made (and accepted) after knowledge by the respondent or her then attorney that the appellant had cancelled the contract of insurance, yet this was some evidence of waiver, and the issue had to be submitted to the jury.

The Treasurer of the Local or Subordinate Lodge testified that he refunded to, and the respondent accepted the portion of the April dues representing insurance premiums and that Mr. Dennis (the insured) continued in Honorary Membership which entitled him to a funeral benefit of $200.00, the receipt for which is in evidence. The receipt for dues for May in the amount of $2.00 shows that it included only Subordinate and Grand Lodge dues, and Funeral Benefit dues, all of which is corroborative of the testimony of the Treasurer of the Local Lodge. It should be stated that the respondent denied that the April premium had been refunded to her. If the April premium should have been, and was returned, then so should the

unearned portion of the premium for the month of March have been refunded at the same time. Of course, this is separate and apart from a return of all premiums which had been paid for the life policy. It occurs to the writer that the jury may have considered this in passing on the issue submitted to them. Be that as it may, only the trial Judge had the power to grant a new trial if in his judgment the jury decided against the weight of the testimony.

The next question relates to insured's health at date of the issuance and delivery of the certificate. It is stipulated in the application, forming a part of the contract, that it would not be binding until the certificate was delivered to the insured while he was in good health. If he was not in good health at said time, the contract never became a binding obligation and appellant's liability is limited to a return of the premiums paid, tender of which was duly made.

It is held in *Crocker v. Life Ins. Co. of Va.,* 183 S. C. 439, 191 S. E. 312, that under a life policy which provides that it is void if insured be not in sound health on its issuance, liability of insurer, on breach of such condition, is limited to a return of premiums paid.

Less than sixty days after the issuance and delivery of this certificate of insurance $x$-ray pictures were made by Dr. Lamar Lee, an outstanding physician and surgeon in this section of the State, which disclosed that the insured was suffering from "advanced bilateral pulmonary tuberculosis." He entered the Florence-Darlington Tuberculosis Sanatorium on December 19, 1943, and remained there until his death on May 25, 1944, from the disease. Dr. Lee, the insured's physician, testified that it was his opinion from the examination, $x$-ray pictures and insured's subsequent early death, that he had tuberculosis in October when the application was made and policy was issued. But he also testified that it would be possible for a man to be healthy at the time above referred to and develop tuberculosis by the time he discovered it. Dr. E. C. Hood testified

that the insured probably had tuberculosis for several months before his examination in December, 1943, but that no one could give a positive answer of "yes" or "no" as to whether the insured had tuberculosis in October, 1943. He testified that he had advised the insured on a number of occasions when he was visiting his brother, to be *x*-rayed for the purpose of discovering whether he had tuberculosis; that the insured was a small man and didn't look healthy. Dr. West, medical director of appellant, testified, on the history of the case as discovered by the investigation of his disability claim, that it was his unqualified opinion that claimant was suffering from tuberculosis prior to October 1, 1943. There was testimony on the part of the respondent that the insured was not sick very much and worked regularly until he developed "flu" in December, 1943, but there is no testimony in behalf of the respondent as to his actual state of health as distinguished from his apparent state of health when the certificate was delivered.

Of course, on this point, the actual and not the apparent health of the insured is controlling. *Cooley v. Metropolitan Life Ins. Co.,* 153 S. C. 280, 150 S. E. 793. While it is a very close question, yet under our holding in the case of *Poston v. Southeastern Const. Co.,* 208 S. C. 35, 36 S. E. (2d) 858, and that of *Anderson v. Campbell Tile Co.,* 202 S. C. 54, 24 S. E. (2d) 104, wherein this Court quoted with approval from 32 C. J. S., Evidence, § 569, p. 396, "The opinions of physicians or medical experts may constitute substantial evidence, sufficient to support a finding, verdict, or judgment, but their credibility, and the weight of their testimony is for the jury or other trier of the facts," we are forced to the conclusion that the testimony made an issue which had to be submitted to the jury. Again we call attention to the fact that only the trial Judge had the power to grant a new trial if in his judgment the jury decided against the weight of the testimony; and this Court is limited to a reversal of cases in which the trial Judge abused his discretion in not granting a new trial

where the weight of the testimony is so clearly contrary to the finding of the jury as to make it almost a certainty. (It has been quite difficult for the writer, with his personal knowledge of the great ability and integrity of the local physicians testifying in this case, Dr. Hood being an expert in the field of tuberculosis, to reach the conclusion that there was not an "abuse of discretion" on the part of the trial Judge in not at least granting a new trial.)

It will be noted that we have not bottomed our decision on the last question above decided on the ground that there was any waiver of that condition, that is, good health at the time the policy was delivered. Therefore it is unnecessary that we discuss appellant's No. 3 of "Questions Presented" reading: "Was the plaintiff entitled to offer proof of waiver of provisions of policy as to good health?" In fact no such testimony was offered except in reply to the testimony of the appellant.

While on this question it is well that we at this point pass upon the appellant's question No. 6 which is so closely related. The respondent brought her action on the contract of insurance which had been duly delivered, and the contention of the respondent throughout was that the insured was in good health at the time it was delivered. This issue was first raised by appellant's answer, and then by its testimony. While not denominated as an affirmative defense, yet no other construction could have been placed on the pleadings. The possession of the life certificate by the respondent, the beneficiary, raised the presumption that the terms thereof had been complied with. *Stepp v. National Life & Maturity Association,* 37 S. C. 417, 16 S. E. 134. Moreover, the appellant accepted without protest the ruling of the trial Judge that its attorneys be given the opening and reply argument "because the burden of proof is upon them."

Except for the testimony of Honorable W. Marshall Bridges that he, acting for the respondent, had tendered the

premium on the life certificate, which was refused, th e would probably be merit in the appellant's position that e life certificate was not in force for the month of May, 1944.

The positive testimony of appellant's witness, Dr. ■ Hood, is that tuberculosis is contracted "by rather long contact with somebody giving off germs" and not by casual contact. There was no testimony that the insured at any time had any contact with his grandmother (who was a tubercular), nor was there any testimony relating to his contacts with his brother who died of tuberculosis other than his visits to him at the Sanatorium. Therefore, it was not error to strike from the testimony of Dr. Hood that portion thereof that his opinion that the insured was suffering from tuberculosis at date of issue of the policy was based upon history of tuberculosis in his family.

Appellant's Exception 5, more succinctly stated in ■ its No. 7 of the "Questions Presented," alleges error in the charge of the trial Judge to the jury, said charge being in the language following:

"I charge you in connection with the statement, with the allegations the defendant has made to the effect that the brother of the insured had died of tuberculosis, that you will have to consider the question of fact there as to whether that statement, made by the insured, was material to the risk assumed. You will have to find before a recovery by the plaintiff could be defeated on that ground, you would have to find that the insurance would not have been issued by the defendant that if it had known at that time that a member of the family of the insured had had tuberculosis."

We have hereinbefore stated that the answers to the questions in the application for this insurance were material, especially the answer to Question No. 21, wherein the inquiry was made if the insured had any relatives who had ever suffered from tuberculosis. * * * and the answer was "No." But we have also held that it was a question for the jury to decide if the appellant waived the false answer

made to the question after knowledge of the falsity of his answer, and even after learning that the insured himself was in a tuberculosis hospital for treatment.

In the light of the full charge of the trial Judge, especially where the issue of waiver of the materiality of this false statement was submitted to the jury, we think this error in the charge was harmless. Except for the issue of waiver raised by the testimony it would have been the duty of the trial Judge to grant appellant's motion for a direction of verdict in its behalf.

Although the writer of this opinion (and I assume the other members of the Court) definitely disagree with the conclusion reached on this case by the jury, yet we are powerless under the law to grant the appellant relief.

All exceptions are overruled, and the judgment is affirmed.

FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.