## 16621

### WINDHAM v. CITY OF FLORENCE *ET AL.*
(70 S. E. (2d) 553)

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod* and *Julian L. Johnson, Assistant Attorneys General,* of Columbia, *for Appellants,* cite:

April·28, 1952.

Oxner, Justice.

This is a proceeding under the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.*, by the widow to recover compensation for the death of James L. Windham, who

was employed as a fire truck driver by the City of Florence. He collapsed while walking on a street in the City of Florence on February 5, 1949, a day on which he was off duty, and died on February 17, 1949, of coronary occlusion.

Claimant contends that at a large fire in the City of Florence, about the middle of December, 1948, her husband was subjected to unusual physical exertion and strain, which damaged his heart and caused or hastened his death approximately two months later. The hearing Commissioner sustained the claim. On appeal to the full Commission, a majority found that the deceased was not subjected to exertion of such nature as to be termed an accident, stating: "A fair appraisal of the evidence in its entirety compels a majority of the Commission to conclude that the facts in this case do not reveal an accident as contemplated under the terms of our law." It was the further conclusion of the majority of the Commission that assuming that the deceased sustained an accident, his death did not proximately result therefrom.

On appeal by claimant, the Circuit Judge reversed the findings of the full Commission and reinstated the award made by the hearing Commissioner. He stated: "In my examination of this evidence, there is only one inference to be drawn therefrom and that is the overexertion either brought about the death of Mr. Windham or hastened and accelerated any coronary crisis which may have existed unknown to him. * * * It is my conclusion that the Commission committed error as a matter of law in finding that there was not an accident, and committed error as a matter of fact in finding the absence of proximate result, or causal connection between the accident and the death."

It is well settled that the limit of the inquiry which this Court is permitted to make "is whether there is any competent testimony reasonably tending to support the finding of fact by the Commission and that the sufficiency of the evidence is for the Industrial Commission,

but, of course, any finding of fact by the Commission must be founded on evidence, and cannot rest on surmise, conjecture or speculation." *Smith v. Southern Builders*, 202 S. C. 88, 24 S. E. (2d) 109, 111. It is further clear that a conclusion by the Industrial Commission by way of reasonable inference from the evidence is a finding of fact. With these principles in mind, we now turn to the testimony.

The deceased, who was 66 years of age, had been employed by the Florence fire department for approximately twenty-five years. During the last few years he was known as a "house man", going only to large fires where there was a second alarm. On these occasions his duties required him to unload the hose from the truck and connect it with the hydrant, start and operate the pumps, and when necessary, move the hose to new locations.

About the middle of December, 1948, an unusually large fire occurred in the business district of the City of Florence, starting around 9:30 in the morning and continuing for approximately twelve hours. The deceased was on duty practically the entire period. There was quite a strain upon all the firemen. There is no evidence that the deceased entered the burning building. He was seen during the day operating the pump and occasionally moving and placing the hose. Several witnesses testified that he appeared exhausted, talked very little and had "shortness of breath." One said: "He (deceased) could not stand it like I could. He gives out very easily." The fire chief, who was on duty all day, testified that operating a pump is not strenuous work and requires no great exertion. He said that he saw deceased twice during the day. On one occasion he was sitting on the side of the truck and on the other fixing the levers of the engine.

Claimant testified that her husband returned on the night of the fire exhausted, ate no supper and went immediately to bed; that he complained of pain in his chest and left arm; that such complaints had never been made before the fire; and that thereafter these pains became more frequent and

severe. One fireman also testified that subsequent to the fire he heard the deceased complain of similar pains.

It is undisputed that the deceased returned to work the morning after the fire and remained continuously on the job until his collapse on February 5th. No physician was consulted for several weeks after the fire. The fire chief testified that at no time during the day of the fire or thereafter did the deceased ever complain to him of chest or arm pains or any other illness, although he saw him every day, and that the first knowledge he had that the deceased was not well was the report that he had collapsed on the street. It further appears that the deceased never made any claim for compensation on account of the alleged accident sustained on the day of the fire.

The only medical testimony in the case was by Dr. L. M. Lide. He testified that he had known deceased for a number of years and had occasionally attended him for influenza and other minor illnesses; that he had a record of having seen him in October, 1948, with a complaint of prostration; that although deceased was suffering from hardening of the arteries, he never heard of any symptoms of heart disease prior to the fire; that the first time he saw him after the fire was during the early part of January, at which time he complained of chest pains radiating down into the left arm, which was very suggestive of angina; and that the deceased gave a history of having become exhausted at the fire followed by pains in the chest and arm that night and at various times thereafter. Dr. Lide expressed the opinion that death was precipitated by excessive strain undergone on the day of the fire. He further stated "that minor occlusions and minor thrombosis do take place which are not even recognized"; that "extra tension, physical strain, has its part in the aggravation of the sclerosis of the coronary arteries narrowing and thickening, and so on"; and that "every episode of excessive exertion, tension and so on builds up for the hazards of occlusion."

On cross examination, Dr. Lide testified in part as follows:

"A. Let's see—Coronary sclerosis with angina due to—. That was left blank? (Referring to the death certificate.)

"Q. Yes, sir. A. Well, due to the changes and tensions and so on. Not one single occasion as a matter of fact. I would not have considered exertion, fatigue or excitement of precipitation (participation) in this fire on one occasion as the cause. I would not have ascribed it at all to that. I would say in that particular case it is logical to believe aggravated his condition at least.

"Q. But you didn't put that as the sole cause? A. No, I couldn't say that is the sole cause.

"Q. His age, of course, would have had a large part to do with his condition? A. That is correct. He was sixty-six and that occurs more after middle life. Of course, it is variable with age. Some never do have it, of course.

"Q. If he had been engaged in strenuous activity on the day he fainted or had this attack would he have had the attack on that date? A. That was probably the cause of falling on the street. That was the day that he was put in the hospital for observation.

"Q. Would exertion on that day have caused his death, or would the fire have? A. Well, he certainly for some weeks was incapable of walking fast, incapable of walking about a block or two without some symptoms. I don't know what he was doing but walking down the street. I don't (know) how long he had been up or outside walking, but I do know that at about that time even a moderate amount of walking or exertion would bring on symptoms, and I presume most likely brought on this following attack which was due to angina.

"Q. Can you say that he would not have fallen if he had not been at the fire or overexerted himself? A. Would not have lost his life?

"Q. Yes. A. No, I don't think we could say that positively. I would say it is likely that it hastened his coronary crisis in all likelihood."

On re-direct examination, he testified as follows:

"Q. It is your opinion that the exertion of the fire from your examination of him and the history given that the exertion hastened his death? A. I believe that is true.

"Q. That is your medical opinion? A. Yes, sir."

We have held that where an employee suffers a fatal heart attack brought about or accelerated by unexpected strain or overexertion at work, compensation may be recovered. *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334; *Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762. In each of these cases it was found that there was sufficient evidence to reasonably warrant a finding by the Industrial Commission that the employee's death of heart disease was caused or accelerated by the hazard of the employment. In *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510, and *Willard v. Commissioners of Public Works of City of Spartanburg,* 219 S. C. 447, 65 S. E. (2d) 874, the employee died of heart disease while on the job but compensation was denied because there was no evidence that the attack was brought on or accelerated by overexertion or unusual strain incident to the employment.

It may be fairly assumed that all the firemen were under considerable strain on the day of the fire. Due to his age and physical condition the deceased may have been affected to a greater degree than the others. Assuming that the claimed overexertion suffered by him constituted an accident within the contemplation of the Workmen's Compensation Act, we do not think it can be soundly held as a matter of law that such accident caused or hastened his death about two months later. The evidence with respect to causal connection between the alleged accident and death is subject to more than one reasonable inference and the conclusion of fact by the majority of the commission with respect thereto is not subject to review by the courts.

It is well settled under our decisions that where medical testimony is relied on to show a causal connection between an accident and a certain result, it is not sufficient for the doctors to say simply that the ailment in question "possibly" or "might have" resulted from the accident, but the medical experts must go further and testify at least that in their professional opinion the result in question "most probably" came from the alleged cause. *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1; *Ashley v. South Carolina Highway Department,* 213 S. C. 354, 49 S. E. (2d) 505; *Burgess v. Belton Mills,* 215 S. C. 364, 55 S. E. (2d) 292.

The testimony of Dr. Lide on direct examination appears to meet the foregoing requirement. It was sufficient to sustain the finding made by the hearing Commissioner that there was a causal connection between the alleged accident and the death of the deceased. But when this testimony is considered in the light of the answers given on cross examination and the assumed facts upon which Dr. Lide's opinion rests, an inference of lack of causal connection as found by a majority of the Commission, may be reasonably drawn. Dr. Lide assumes that the deceased did not suffer from heart disease before the fire. But there is no evidence that up to this time there was ever any heart examination made. There is the further assumption that symptoms of angina appeared on the day of the fire and thereafter grew more intense and frequent. This is contradicted to some extent by the testimony of the fire chief that no complaint of any illness was ever made to him, although he saw the deceased every day. There is also no way of definitely determining whether the deceased underwent any undue exertion on the day he collapsed or on other occasions after the fire.

Assuming as correct the facts upon which Dr. Lide expressed his opinion, we doubt if medical science has yet reached a point where, under the circumstances of this case, an unqualified answer as to causal con-

nection can be given. The Industrial Commission was not bound to accept the conclusion reached by Dr. Lide as the correct one. No fact finding body is compelled to blindly accept an expert's opinion. While there may be circumstances where medical testimony is conclusive, ordinarily such opinions, although uncontradicted, are not conclusive in the sense that they must be accepted as true. They may be rejected if found inconsistent with the facts or otherwise unreasonable. *Anderson v. Campbell Tile Co.*, 202 S. C. 54, 24 S. E. (2d) 104; *In re Crawford*, 205 S. C. 72, 30 S. E. (2d) 841; *Poston v. Southeastern Construction Co.*, 208 S. C. 35, 36 S. E. (2d) 858; *Kilpatrick v. Brotherhood of Railroad Trainmen Insurance Department*, 210 S. C. 379, 42 S. E. (2d) 891; 20 Am. Jur., Evidence, Section 1208; 32 C. J. S., Evidence, § 569(c). The subject of expert medical evidence was discussed by the present Chief Justice in the case of *In re Crawford, supra,* where he observed: "Instances are not wanting in which this and other courts have been called upon to completely reject expert testimony." [205 S. C. 72, 30 S. E. (2d) 848.]

We desire to state that nothing herein said should be construed as questioning the good faith or ability of Dr. Lide. We merely hold that his opinion was not conclusive and it was for the Industrial Commission to give it such weight as that body saw fit.

The function of the Industrial Commission in passing upon the facts has frequently been likened to that of a jury. *Branch v. Pacific Mills, supra,* 205 S. C. 353, 32 S. E. (2d) 1. If this case had been tried by a jury, would the trial judge have been warranted in peremptorily instructing the jury that the overexertion and fatigue suffered by deceased on the day of the fire caused or hastened his death two months later? We think not.

We find it unnecessary to pass upon the other questions raised by the exceptions.

The order appealed from is reversed, and the case is remanded for entry of judgment denying compensation in accordance with the opinion of the majority of the Commission.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

BAKER, C. J., not participating.