14943

NEXT OF KIN OF CLINTON COLE v. ANDERSON COTTON MILLS *ET AL.*

(4 S. E. (2d), 908)

January, 1938.

*Messrs. Watkins & Prince,* for appellants, 

*Mr. S. Eugene Haley,* for respondents, 

October 10, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Clinton Cole was an employee of the Anderson Cotton Mills as a loom-fixer. On Friday, May 21, 1937, he was engaged in overhauling looms, putting on "stop motions," and working with the overhauling crew. He was using a wrench about seven inches long with which he tightened nuts, or bolts, on stop motions. In the forenoon of May 21, he complained to his immediate overseer, who was his father, that a catch came in his arm while he was tightening a seven-inch nut with the wrench. He told his father that he had hurt his shoulder. He was treated by Dr. J. B. Latimer, who saw him first on Monday, May 24, and treated him until he was taken to the hospital and operated on twice; he died June 6, 1937.

Claim was made under the Workmen's Compensation Act, and heard in the first instance by Commissioner Dukes. Much testimony was taken and, after argument, Commissioner Dukes made an award in favor of the claimant. An appeal was taken to the full Commission which by a majority opinion affirmed the award. This award was taken by appeal to the Court of Common Pleas, which in due time

affirmed the action of the full Commission; and now the appeal comes to this Court.

When A. C. Cole, the father of Clinton Cole, was on the stand, in answer to a question, he said: "He came to me some time about the noon hour and told me he had hurt himself." Defendant's counsel objected to the question on the grounds that the answer would "be a self-serving declaration and incompetent as hearsay." The objection was overruled.

When Dr. J. B. Latimer was on the stand, he was asked: "Did he give you any history as to what was the cause of his pain?" Objection was made to this question on the ground that it also "would be a self-serving declaration and incompetent as hearsay." The objection was overruled.

This same objection was made and overruled whenever a witness for plaintiff was asked if the deceased had told witnesses how he had been hurt. It is needless to recite the exact occurrence each time. Is such testimony as these questions would evoke, incompetent on the ground that it would be a self-serving declaration and incompetent as hearsay?

It is significant that in no one of the South Carolina cases in which the Workmen's Compensation Act, 39 St. at Large, p. 1231, has been before the Court has this question been directly decided. When it has been raised in some cases, it has not been considered because each of such cases was decided on some other ground. It is a matter continually arising and it would seem proper that it be disposed of.

The answer does not depend upon an application of the common-law rule, nor does it depend upon the citation of the decisions of the Courts of other jurisdictions which have Workmen's Compensation Acts. Some of these Acts have features in common, but we have found no two of them alike.

It would seem logical that if an employee be required by the terms of the Act to report to his immediate superior that he has suffered an injury, that the superior should be al-

lowed to testify as to what the workman said in making his report. Or if it be necessary that the workman consult a doctor, that the doctor should be allowed to testify as to what the workman said in giving a history of his case. Suppose the injured person is all alone when the injury is sustained, or suppose he dies immediately from the effect of the injury, shall his beneficiaries be deprived of the benefits of compensation because there is no one who can testify as an eye witness, or as one to whom the injured person told how the accident occurred? It is universally recognized that a physician must depend upon his patient for a history of his trouble. It is recognized that in such circumstances the claimant may falsify the facts and impose upon the credulity of the questioner. It is doubtless for that reason that in some jurisdictions the rule has been laid down that such questions may be asked and answered, but that no award shall be allowed unless such evidence be supported by facts and circumstances duly proved.

From the case of *Associated General Contractors of America, Inc., et al., v. Frank A. Cardillo, Deputy Commissioner et al.,* 70 App. D. C., 303, 106 F. (2d), 327, 328, decided by the United States Court of Appeals for the District of Columbia, in which the opinion was filed June 26, 1939, we quote:

"This is an employee's compensation case. Whitman P. Conn, the employee, died on January 3, 1937, of a cerebral hemorrhage. The Deputy Commissioner awarded compensation on the basis of findings that on November 15, 1936, Mr. Conn struck his right temple against a filing cabinet in defendant's office, and that this injury caused the hemorrhage. The employer and the insurance carrier sued in the District Court to set aside the award. They have appealed from a decree dismissing their bill.

"Conn's widow and daughter testified that he came home from the office about November 15, at the usual time, and told them he had struck his head on a filing cabinet there.

A brother-in-law testified to a like statement by Conn on Thanksgiving day. The Deputy Commissioner is not bound by common-law rules of evidence; and the statute which so provides also provides that the 'declarations of a deceased employee concerning the injury * * * shall be received in evidence and shall, if corroborated by other evidence, be sufficient to establish the injury.'

* * *

"The Deputy Commissioner and the District Court were within their discretion in finding, in effect, that Conn's declarations concerning the injury were corroborated. 'The further definition of the term "corroboration," by detailed rules of law, is unwise and unpractical.' 4 Wigmore, Evidence, § 2062. Whatever tends to make a story substantially more credible or probable corroborates it. * * * We should be construing the Act very narrowly if we held, in effect, that awards must be supported by eye-witness testimony. As appellees' counsel point out in their brief: apart from declarations of the deceased, fatal 'injuries sustained by employees while working alone or while not under observation * * * cannot be ordinarily proved by any means other than the introduction of (1) testimony, such as was adduced in the present case * * * that cuts, bruises, lacerations, or other objective symptoms of injury were observed * * * shortly after the injury was alleged to have been sustained, and (2) medical evidence that the alleged injury could have occurred in the manner described by the decedent and could have caused the condition of the decedent disclosed by medical examination or autopsy.' "

It is true that the above opinion of the U. S. Court of Appeals for the District of Columbia is not binding on us, but it is suggestive and persuasive. It is also true that that decision relies largely on the provisions of the pertinent statute, but it states principles and conclusions announced and relied on in other jurisdictions. It is also true that our

statute does not in express terms state what evidence shall be admissible in proving a claim, but it does say in Section 54 of the Act: "Processes and procedure under this Act shall be as summary and simple as reasonably may be."

This language does not immediately relate to or regulate the taking of testimony, nor does it prescribe any rule governing the nature of the testimony admissible or pertinent; but it plainly indicates that the Legislature which made the law intended to simplify the process and procedure by which the workman could test his right to compensation for injury sustained. To that end the trial of his cause in the Court of Common Pleas, with its strict rules and technicalities of the law, is superseded by the process and procedure set forth in the Act. It seems to us to be an entirely reasonable declaration to say that the person injured, the person to whom he reported his injury, the doctor who examined him or performed an autopsy may legally testify as to what was told them or what they discovered by observation or examination. This view is strengthened by noting the provision of Section 27 of the Act, Act No. 610, 39 St. at Large, page 1231: "* * * No fact communicated to or otherwise learned by any physician or surgeon who may have attended or examined the employee, or who may have been present at any examination, shall be privileged, either in hearings provided for by this Act or any action at law brought to recover damages against any employer who may have accepted the compensation provisions of this Act. * * *"

It has long been established law that communications made to one's doctor are privileged, and all honorable physicians have held, and do hold, such communications as a trust which they will not violate. When, then, this Act takes from them this protection, it may with confidence be held that the Act does not protect the person to whom the injured one has made his complaint from tes-

tifying to such communication on the ground that it would be hearsay evidence.

We think that the safe rule is that the proof of injury must be corroborated by evidence other than the statements made by the injured one to his superior or to others, and circumstances duly proved.

In the case of *Murdaugh v. Robert Lee Construction Co.,* 185 S. C., 497, 194 S. E., 447, 449, this is said: "The statute is to be construed liberally for the protection of the injured employee—to promote the purpose of its enactment." Citing cases from other jurisdictions.

"The findings and award of Industrial Commission will not be disturbed by the court because of presence of hearsay testimony, when there is other competent evidence of sufficient probative force upon which to base the findings." Syllabus, *Maley v. Thomasville Furniture Company,* 214 N. C., 589, 200 S. E., 438.

That seems to be the reasonable rule.

The issue raised by appellants' third exception is thus analyzed: If it be conceded that the testimony on behalf of plaintiffs is admissible, is it of sufficient probative value to show that the injury which the claimant suffered was caused by accident within the meaning of the Compensation Act?

Briefly stated, it appears that Cole stated that while engaged in his usual employment he was engaged in "tightening on a stand in a stop motion" when he felt a pain in his right shoulder. Later developments showed that he was suffering from osteomyelitis, which Dr. Latimer defined to be "a destruction of the outer covering of the bone as a result of some infection."

It is in evidence that a large amount of pus was drained from this shoulder, at two separate times. The vital question is: Did the infection result from the tightening of the nut with the wrench, or did the pain which Cole felt at the

time of the using of the wrench result from the infection (pus) then in the shoulder?

The single commissioner, Mr. Dukes, finds as a matter of fact that the injury of which Clinton Cole complained was ·caused by "accident" arising out of and in the course of his employment, resulting in an injury to his right shoulder from which he finally (on June 6th) succumbed.

This finding of fact was concurred in by the full Commission on review and by the Circuit Judge who heard the case on appeal to that Court. Appellants by their third exception challenge this finding in the following language: "Because there was no sufficient, if any, competent testimony showing that the death of Clinton Cole was the result of any injury by accident arising out of and in the scope and course of his employment within the meaning of the provisions of the Compensation Act."

Section 60 of the Act provides that: "The award of the Commission * * * shall be conclusive and binding as to all questions of fact; * * *."

This Court has said that that provision of the Act has the same force as the provision of our Constitution that the verdict of a jury is the final conclusion of the facts of a case. See *Murdaugh v. Robert Lee Construction Company, supra,* and other cases.

But appellants argue that this was not an accident within the meaning of the Act, and is a question of law and not of fact.

In the case of *Layton v. Hammond-Brown-Jennings Company et al.,* 190 S. C., 425, 3 S. E. (2d), 492, 496, filed June 12, 1939, Mr. Justice Baker in an able opinion discusses the meaning of "accident" within the meaning of the provisions of the Act. He states that the rule, as is clearly deducible from the opinion of this Court in the case of *Goethe v. New York Life Insurance Company,* 183 S. C., 199, 190 S. E., 451, is stated in that case as follows: "The rule clearly deducible from the overwhelming weight of author-

ity is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western Commercial Travelers' Association v. Smith,* 85 F., 401, 405, 29 C. C. A., 223, 56 U. S. App., 393, 40 L. R. A., 653, where he says: 'An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means.' "

It is conceded that if there is any competent evidence to support the findings of fact by the Commission, the sufficiency of it is not a question for this Court; by the express provisions of the Act that question is solely for the Commission. Is there such evidence in the case now before us?

Dr. J. B. Latimer gave a full account of his actions in regard to the case, including the statement of Cole which need not be repeated here. On cross examination appellants' counsel asked the doctor:

"Q. What is osteomyelitis? Is that a growth on the bone? A. No, that is a destruction of the outer covering of the bone as a result of some infection. * * *

"Q. Don't you think or do you, you have examined lots of men who have played baseball and football and everything else and all, and don't you think that possibly it would be more probable to receive an injury that way by throwing a ball than to be pulling on a wrench? A. Well, I think it is possible to get an injury like that, like a strained arm just exactly like this man complained of, or by throwing a ball. * * *

"Q. In your opinion, what was the cause of death? A. Well, I think the cause of death was a septicemia, a bron-

chial pneumonia and abscess of the right shoulder. They probably should have been put in different order.

"Q. Could you say it was the result of an accident or injury? A. I could not absolutely swear to that *but in my opinion, the accident was a predisposing cause of his death.*" (Italics added.)

Dr. C. H. Young on direct examination was asked:

"Q. The injury in that shoulder could have caused his death? A. Yes. * * *

"Q. Then the osteomyelitis must have developed after the alleged injury? A. Yes."

There is other testimony to the effect that when Clinton Cole came to work on the morning of May 21 he seemed well; that toward the middle of the day he complained of pain in his right shoulder, which he suffered while pulling on a wrench to tighten a nut on a stop motion; that he grew worse, suffering much pain, was taken to the hospital and operated on; that pneumonia developed and he died.

This Court cannot say that there was no evidence to sustain the finding of fact by the Commission.

It follows that the exceptions must be and are overruled and the judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.

MR. JUSTICE CARTER did not participate on account of illness.