16175

RIVERS v. V. P. LOFTIS CO. *ET AL.*
(51 S. E. (2d) 510)

Messrs. A. R. McGowan, Irving Steinberg and James H. Harvey, all of Charleston, and J. D. Parler, of St. George, for Appellant.

..Messrs Hagood, Rivers & Young, of Charleston, for Respondents,

Messrs. A. R. McGowan, Irving Steinberg and James H: Harvey, all of Charleston, and J. D. Parler, of St. George, for appellant, in reply,

January 26, 1949.

BAKER, Chief Justice.

Except for minor changes, the following, appearing in quotation, is taken from the agreed Statement in the Transcript of Record:

"This is an appeal in a workmen's compensation case from an order by the Honorable Marvin M. Mann, Circuit Judge, reversing the finding of fact and the award made by the hearing Commissioner, which said finding of fact and award were affirmed by the South Carolina Industrial Commission as a whole.

"The appellant, Evelyn Rivers, is the common-law widow of the deceased, Robert Moses Rivers, and was the sole beneficiary of the award of the South Carolina Industrial Commission.

"It is admitted that all parties hereto are subject to and bound by the terms and provisions of the Workmen's Compensation Act [Code 1942, § 7035-1 *et seq.*]; that the deceased was an employee of the respondent, V. P. Loftis Company, on the date of his death; that he died while in the discharge of his duties as its employee, and that his compensable wage was as stated in the award.

"The sole question involved in this appeal is: 'Did the deceased come to his death as the result of an accident arising out of his employment?'

"Every other issue involved is either admitted or uncontested by the appellant and the respondents."

The deceased was a colored man, 35 years of age, who had been suffering from a serious heart ailment over a period of several years. Due to his heart condition he could not work regularly—some days he was up, some days he was down, and some weeks he could not work at all. On Saturday, September 5, 1942, he entered the employment of the respondent, V. P. Loftis Company, as a deck hand on a 31-foot tug, the crew of which consisted of a Mr. Anderson, the skipper, and the deceased in the capacity aforestated. It is admitted that the corespondent named in the caption was

the insurance carrier, and we will make no further reference to such respondent. If we have occasion to refer to V. P. Loftis Company, it will be as respondent.

The deceased was apparently feeling fine when he entered upon this employment, and the respondent accepted him without inquiry as to his physical condition, and without a physical examination. He worked on this tug boat from Saturday morning until the following Tuesday afternoon without complaining of any physical discomfort, and apparently his duties were performed in a satisfactory manner. Late Tuesday afternoon (September 8, 1942) between five and six o'clock, the skipper, Mr. Anderson, docked this tug in the slip or berth which rightfully belonged to a 75 foot long, 35 foot wide barge. At about this time, the barge was arriving, and when it reached signaling distance, the tug was signaled to stand off until the barge could come in and be made fast. Whereupon the deceased untied the line and the skipper backed the tug out. It did not require that any one on the tug rush in order to clear for the docking of the barge. There was "plenty of time." Upon the barge coming in and making fast, the tug was then steered back into the dock and within five or six feet of the barge. Attached to the tug and used for the purpose of making it fast in the dock was a three-fourths inch (usually referred to as a one inch) manilla rope fifteen feet long, lacking a few inches, and the deceased was instructed to throw an end of this rope over to the barge—a distance of about five or six feet. The rope was dry and did not weigh more than two or three pounds, and it required no substantial effort to throw the end of this rope the short distance to the barge. The deceased did not have the entire rope in his hands, although more than one-half of it. As he threw the end of the rope to a person on the barge, the deceased crumpled and fell, and rolled into the water which was estimated to be approximately ten feet deep. His body was recovered within three to five minutes, but it is admitted that he was dead before hit-

ting the water. And it is further admitted that the death of the deceased was caused by some form of serious heart disease, the only issue here being whether the very slight exertion from casting an end of this very light rope a distance of five or six feet aggravated his heart condition or accelerated his death. In other words, did the deceased come to his death as the result of an accident arising out of his employment, or was it merely coincidental that the deceased died at the moment he did?

The mere fact of death during employment is not a basis for an award. The death must be proximately caused by an accident that arose out of the employment; and the burden is on the claimant to establish such fact.

"It is, of course, a well-settled principle of law that findings of fact by the Commission are conclusive and that the court may not review such findings except to determine whether there is any evidence to support the award. But while the findings of fact will be upheld, if there is any supporting evidence, such findings must be, of course, founded on the evidence and cannot rest on surmise, conjecture, or speculation." *Hill v. Skinner et al.,* 195 S. C. 330, 11 S. E. (2d) 386, 387 citing *Rudd v. Fairforest Finishing Company,* 189 S. C. 188, 200 S. E. 727.

Under the testimony in this case, and there is no dispute thereabout, the appellant had to resort to expert medical testimony in an endeavor to show that the employment of the deecased, and the duty he was performing at the time, had some causal conection with his death. Recognizing this, the claimant (appellant offered in evidence the testimony of two physicians, neither of whom would express the opinion, based on the case history, that the heart attack suffered by the deceased and from which he died was even probably caused by the slight exertion of throwing this light rope a distance of five or six feet. The nearest approach to any testimony tending to show any causal conection was that of Dr.

McInnes when he testified: "*If* he (the deceased) had a myocarditis where he had an acute dilatation anything *could have caused it.*" (Emphasis added.) It will therefore be seen that the award of the Industrial Commission (reversed by the learned Circuit Judge) was based wholly on surmise, conjecture, and speculation.

As aforestated, under the undisputed facts of this case (and every witness whose testimony appears in the record was placed on the stand by the appellant), the appellant (claimant) was compelled to resort to expert medical testimony in her endeavor to show that the work of the deceased and the service he was performing when he had a sudden heart attack had some causal connection with his death. Therefore, what this Court said in *Branch et al. v. Pacific Mills et al.*, 205 S. C. 353, 32 S. E. (2d) 1, 5 (cited in several subsequent cases), is apposite to this case, and is as follows:

"It must be understood, however, that when, in cases of this class; expert testimony is relied on to show the connection between an alleged cause and a certain result, it is not enough for the doctors to say simply that the ailment in question might have resulted from the assigned cause, or that the one could have brought about the other; they must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion the result in question most probably came from the cause alleged."

See also, *Radcliffe v. Southern Aviation School et al.*, 209 S. C. 411, 40 S. E. (2d) 616.

The testimony in this case failing to disclose any testimony from which a reasonable inference can be drawn that there was any causal conection between the work of the deceased employee and his death, the judgment of the Circuit Court is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.