## 16520

WILLARD v. COMMISSIONERS OF PUBLIC WORKS OF CITY OF SPARTANBURG *ET AL.*

(65 S. E. (2d) 874)

*Messrs. Holcombe & Bomar,* of Spartanburg, *for Appellant,*

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Respondents,*

July 5, 1951.

FISHBURNE, Justice.

This is a proceeding under the Workmen's Compensation Act by Mrs. Emma Dotterer Schirmer Willard, opposed by the Commissioners of Public Works of the City of Spartanburg, employer, and State Workmen's Compensation Fund, as carrier, to recover compensation for the death of her husband, W. G. Willard.

The Commissioners of Public Works administer and operate both the Spartanburg Water Works which supplies water to the City of Spartanburg, and the Spartanburg Metropolitan District, which collects, treats and disposes of the City's sewerage. W. G. Willard had been engineer in charge of the Spartanburg Metropolitan District for many years prior to his death, which occurred on February 24, 1948. It is claimed that he sustained an injury by accident arising out of and in the course of his employment, which caused his death.

This appeal is taken from a judgment of the Court of Common Pleas for Spartanburg County which affirmed an order of the Industrial Commission denying compensation. The Commission held that the death of Mr. Willard did not come within Section 7035-2 (f) of the Code, which reads as follows: " 'Injury' and 'personal injury' shall mean only

injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

It is recognized that the two parts of the phrase used in the Workmen's Compensation Act,—"arising out of", and "in the course of" employment, are not synonymous. "Arising out of" refers to the origin and cause of injury, whereas "in the course of" refers to the time, place and circumstances of the occurrence. *Eargle v. South Carolina Electric & Gas Co.*, 205 S. C. 423, 32 S. E. (2d) 240, 242; *Branch v. Pacific Mills*, 205 S. C. 353, 32 S. E. (2d) 1. One of the elements without the other will not sustain an award. *Dicks v. Brooklyn Cooperage Co.*, 208 S. C. 139, 37 S. E. (2d) 286.

It is well settled that findings of fact by the Industrial Commission are conclusive and binding upon both the Court of Common Pleas and the Supreme Court, if there is any competent evidence reasonably tending to support them, even though there is evidence that would have supported a finding to the contrary. Such findings, however, must have reasonable support in the evidence and cannot rest on conjecture, surmise or speculation. *Rudd v. Fairforest Finishing Co.*, 189 S. C. 188, 200 S. E. 727; *Sligh v. Pacific Mills*, 207 S. C. 316, 35 S. E. (2d) 713; *Rivers v. V. P. Loftis Co.*, 214 S. C. 162, 51 S. E. (2d) 510.

About a week prior to February 24, 1948, Mr. Willard, the deceased, entered the office of Mr. R. B. Simms, his superior, while the latter was reading his mail. Mr. Simms was superintendent of the Commission of Public Works, which handled and controlled both the Waterworks System and the Sewerage System, and as such was very much interested in a new process which was being demonstrated, to remove from cast iron pipe incrustation which inpedes the flow of water. In the mail received by Mr. Simms was an

invitation to attend a demonstration of this water pipe treatment, to be conducted near Charlotte, North Carolina, by a firm of sales engineers. Knowing that Mr. Willard had four or five grand-children living in Charlotte, Mr. Simms asked him if he would like to go to Charlotte on February 24th to see them. He handed a copy of the invitation to Mr. Willard, who, after reading it, stated that he would like very much to go. The day before they were to depart, Mr. Simms telephoned the home of the deceased, and inquired if he still wished to go to Charlotte, and learned that Mr. Willard did wish to accompany him.

Mr. Simms and three other officials or employees of the Waterworks Department left Spartanburg on the morning of February 24th, accompanied by Mr. Willard, for the seventy mile drive to Charlotte to witness the demonstration of the new process to clean water pipes already laid underground. This demonstration was to take place at a point about four miles from Charlotte, where the demonstrators were cleaning water pipe for the city of Charlotte. And it was near this site that Mr. Willard suffered a heart attack and instantly died, under the circumstances hereinafter related.

Mr. Willard was 66 years old at the time of his death, and had been suffering from serious heart trouble since 1932. He had high blood pressure and arterial disease, which is referred to as hardening of the arteries. His physician stated that he occasionally had attacks of angina, and he frequently complained of shortness of breath. Dr. Temples, a heart specialist who had treated him from 1932, testified that he gave him very definite instructions as to restricted physical activity. He said, "I advised him to avoid any undue or sudden and pronounced exertion, which often precipitates trouble in this type of case." The deceased had been suffering from shortness of breath, and went to see Dr. Temples the day before he left for Charlotte. On that morning he made no complaint of angina or pain in the region of the heart, and his physician concluded he was in

as good condition as he had been for many months. The doctor went on to say that the reason he advised Mr. Willard to avoid exertion was because the medical profession regarded it as one of the most dangerous things a man with a heart condition of this kind could indulge in. Dr. Temples stated, "I did regard and so advised that physical exertion requiring more effort than normally used would be dangerous to him, and very likely to precipitate trouble with his heart."

Dr. W. T. Hendrix, Willard's family physician, stated that Mr. Willard for years had suffered from high blood pressure and what he diagnosed as attacks of angina, and that more than once Mr. Willard told him that he had pains in his chest in going up steps or walking uphill, and on numerous occasions while hunting.

When the automobile party consisting of Mr. Simms and the other Waterworks officials, including Mr. Willard, reached Charlotte, they went to a hotel, as prearranged where they greeted in the lobby some thirty or forty other men likewise interested in the new process for cleaning water pipe. From there they proceeded in cars to the spot where the special demonstration was going on.

Before leaving the hotel lobby, Mr. Simms offered to Mr. Willard the keys to his car so that Mr. Willard could go to see his grandchildren, and suggested to him that upon his return from this visit, Mr. Willard meet him back at the hotel for lunch. Mr. Willard then for the first time stated: "'Why, no, you are not going to shake me. I am going out on the job." He did not ride in the car with Mr. Simms to view the demonstration, but in another car with other parties. Mr. Simms testified that at no time did he ask or direct Mr. Willard to go on this expedition for the purpose of inspecting the demonstration, either for the Waterworks Department or for the Metropolitan District which handled the sewage disposal, and which used some iron pipe, but simply invited him to go along to visit his grandchildren.

In making the trip to the scene of the demonstration, they were able to travel three miles in automobiles, but had to walk on foot about a half mile to the point where the work was going on. It was a cold, rainy day; walked over sticky red mud; "it stuck on your shoes, and was very hard walking, slipping and sliding." The walk was downhill, and the pipe line had to be followed about 1200 feet. About 200 feet from the place where the work was being carried on, Mr. Willard, while walking along up a slight knoll, suffered a heart attack, from which he instantly died.

Was the deceased on the day of his death, engaged in activities arising out of and in the course of his employment? The Industrial Commission answered this question in the negative, and was affirmed by the Court of Common Pleas. In our opinion, this finding is the only reasonable inference which may be drawn from the evidence. The uncontradicted facts as we view them can reasonably lead to no other conclusion. It appears clear that when the deceased went to Charlotte, he was going purely for a personal reason, and his presence there had no relation to his employment with the City of Spartanburg. The other officials connected with the Waterworks Department accompanied Mr. Simms at his request to observe the demonstration. But Mr. Simms invited Mr. Willard, who had no duties with the Water Department, to make the trip solely for the purpose of visiting his grandchildren; and never at any time asked or directed him to make the inspection tour. This is further confirmed by what occurred in the lobby of the hotel when Mr. Simms offered Mr. Willard the keys to his automobile so that he could use it in making the visit to his grandchildren. This was the only purpose he had in mind when he extended the invitation; and it was never expected that Mr. Willard would visit the pipe line demonstration.

Analagous cases supporting the finding made by the Industrial Commission and the Court of Common Pleas are

*Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510, and *Branch v. Pacific Mills,* 205, S. C. 353, 32 S. E. (2d) 1.

Nor in our opinion was the death of Mr. Willard ■ due to an accident as that term has been defined by this court. *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Green v. City of Bennettsville,* 197 S. C. 313, 315, 15 S. E. (2d) 334.

The three above cited cases which the appellant appears to rely upon on this feature of the case, deal with elderly employees—all of whom suffered from myocarditis and other heart diseases—who in the regular performance of their duties died from a heart attack, while greatly over exerting themselves. There is, however, a wide factual distinction between the above three cases and the case at bar.

Judgment affirmed.

STUKES, TAYLOR, and OXNER, JJ., and E. H. HENDERSON, A. A. J., concur.