RUST ENGINEERING COMPANY v. C. C. RAMSEY.

June 8, 1953.

Record No. 4074.

Present, All the Justices.

The opinion states the case.

*Gentry & Locke,* for appellant.

*Garnett S. Moore,* for appellee.

HUDGINS, C. J., delivered the opinion of the court.

This appeal presents for review an award entered by the Industrial Commission of Virginia against Rust Engineering Company in favor of C. C. Ramsey for injuries resulting from an alleged accident.

C. C. Ramsey, hereinafter designated "claimant," was an iron worker, employed during a part of February, 1949, by Rust Engineering Company, hereinafter designated "employer," on a construction job at Reusens, near Lynchburg, Virginia. Between 9:00 and 10:00 a. m. on Wednesday, February 9, 1949, claimant complained of being sick. William I. Belcher, his foreman and immediate superior, observed that he was pale and "looked funny," and advised him to stop work and lie down in the "shanty." Later in the day Belcher took him to a physician's office in Lynchburg.

Claimant, in his deposition taken on October 26, 1950, approximately twenty months after the alleged accident, said that after he went into the doctor's office on February 9, 1949, he "just passed out," and did not remember anything until "just a few months" before that date (October 26, 1950).

Doctor H. B. Luttrell stated that "this man came into my office Feb. 12, 1949. At this time he complained of numbness in right arm. He stated that this numbness followed an injury a few days previous (he was lifting a heavy object at the time). Examination at this time showed weight 241 lb., chest negative, blood pressure 128/80, urine—albumin trace, blood Wassermann negative. Two days later when seen in his home blood pressure had gone up markedly. He was disorientated, in fact in a semiconscious state. He appeared to have weakness in both right arm and leg. This weakness was probably due to Cerebral Hemorrhage. It is possible the hemorrhage was due to the injury. I did not see this man after Feb. 14, 1949."

Doctor Charles G. Fox testified that when he examined claimant in his home in Pulaski on February 14, 1949, he found his blood pressure was 195/110. He was unable to speak except for a few disconnected phrases. The doctor, basing his opinion

on the history of the case as given by the patient, said claimant had "had a cerebro-vascular accident, most likely of venous origin" and that he was paralyzed after February 17, 1949; that after following the clinical course outlined for the patient in his home, claimant's blood pressure declined and his condition improved.

Employer's first contention is that claimant is not entitled to compensation because he did not prove an accident arising out of and in the course of his employment.

The only testimony tending to prove that there was an accident arising out of and in the course of the employment emanates from claimant himself. He testified he was 49 years of age and that on February 9, 1949, while he and four co-workers were lifting a conveyor or "a section of L-beam" (weighing from 500 to 700 pounds), the hold of one of the workers slipped and "he gave up his hold on it and I carried it on. There was one man on my side and three on the other side." Claimant testified further that thereafter he was "feeling bad," his right arm hurting him, and that on the advice of William I. Belcher, his foreman, he went to a "shanty" and stayed about an hour, when Belcher took him to a doctor's office in Lynchburg where he became unconscious.

Claimant introduced as witnesses in his behalf Walter Parrish and R. W. Bruce, two men who were helping him lift or unload the steel beam, and J. A. Jones, a master mechanic who was working for the same employer, and who was in close proximity to the five men who were unloading the beam. None of these witnesses testified that he was aware of an accident, or knew of any unusual or fortuitous circumstance resulting in injury to claimant. Parrish said that after the beam was unloaded, claimant remarked that he had caught all of the load. He saw claimant staggering and upon being asked what was wrong, claimant said he was "dizzy." R. W. Bruce testified that claimant told him that the foot of one of the workmen slipped, throwing the weight of the beam on him. Later he heard claimant complain of a pain in his back.

Jones testified that he knew nothing about an accident, but that on the night of February 9, 1949, claimant asked him to rub his arm and while doing so, claimant asked him "did you see those boys throw the load on old Apple?" (a nickname for claimant). On the same occasion claimant told him that the doctor had treated him for an upset stomach.

These witnesses were present at the time claimant claims to have been injured and were in position to see any unusual occurrence that may have taken place. All they knew of an accident was what claimant told them after the beam had been unloaded. Claimant, in his deposition and in his testimony, gave two accounts of how he sustained an injury. One was to the effect that while the five men were unloading the beam the hold of one slipped and he (claimant) had to carry the whole weight on his side. The other is that the conveyor slipped off the truck and he "caught hold of it and went on down with it and it was too much for me." Neither of these two accounts is in accord with the self-serving declarations that he made to three of his co-workers. The result is that we have various different accounts of how the alleged accident occurred, all emanating from claimant himself and uncorroborated by any other evidence.

It is incredible that an accident could have occurred in any of the ways described by claimant without the knowledge of any of the four men who had hold of the same beam at the time.

Section 65-94 of the Code provides "that an award of the Commission shall be conclusive and binding as to all questions of fact." In applying this section, we have repeatedly held that the Industrial Commission's finding of fact which is sustained by credible evidence is binding upon this court. *A. N. Campbell & Co.* v. *Messenger,* 171 Va. 374, 199 S. E. 511; *Stump* v. *Norfolk Shipbuilding Corp.,* 187 Va. 932, 48 S. E. 2d 209; *Lynchburg Foundry Co.* v. *Irvin,* 178 Va. 265, 16 S. E. 2d 646.

In *Byrd* v. *Stonega Coke, etc. Co.,* 182 Va. 212, 220, 28 S. E. 2d 725, after stating the foregoing rule, we said: "The converse of this proposition is equally true; namely, if there is no credible evidence on which the Commission's finding of fact is based, then such finding is not binding upon this court. The question then becomes a question of law."

Mr. Justice Eggleston, speaking for the Court in *Holt* v. *Stone, etc. Engineering Corp.,* 179 Va. 625, 629, 20 S. E. 2d 498, said: "* * * an award which is unsupported by the evidence is illegal and should be set aside."

Employer's second contention is that the evidence does not prove that the alleged accident was a proximate or producing cause of claimant's disability.

Doctors Fox and Luttrell testified that claimant's malady developed into a cerebral hemorrhage, which might have been

produced by lifting a heavy object; and in view of the history of the case as related by claimant to them, they attributed his condition to such cause.

The evidence is that claimant was suffering from hypertension prior to February 9, 1949. Doctor Luttrell testified that he examined claimant on December 26, 1947, at which time his blood pressure was 170/100 and that this high diastolic pressure indicated arteriosclerosis. Before claimant attempted to unload the steel beam, his foreman, Belcher, noticed that he was pale, was unable to weld, and advised him to go up to the "shanty" and lie down. Belcher visited him that night and advised him to "go home and get straightened out," but claimant did not take his advice, returned to work on Friday and told the foreman that he was "feeling very well." Claimant at no time informed Belcher that he had been hurt or had suffered an injury while at work.

Other than claimant's self-serving declarations, there is no evidence of exertion beyond that usually required in performing the duties for which claimant had been employed, and to which he was accustomed. It may be that his continued work lifting beam, which was a part of his regular duties, had a tendency to augment the existing arteriosclerosis. It is well known that hemorrhages may occur at any time and for various causes mentioned in the different medical text books. In this case it seems that the most probable cause of claimant's malady was a progressive development of arteriosclerosis, augmented by his normal activities. But even if claimant's disability occurred in the course of his employment, this fact is no indication that it arose from the hazard of such employment.

Doctor Fox also testified that claimant's condition could have been caused by sneezing, coughing or other similar events. His final statement is "It is known that straining causes an increase in venous pressure, and *it is conceivable* that the strain of an extremely heavy lift such as was performed by this patient, might cause a rupture of a cerebral vein or cerebral venus sinus." (Italics supplied.) Doctor Luttrell, in his letter of September 22, 1950, said "It is possible the hemorrhage was due to the injury."

Possibility is not enough.

We said in *A. N. Campbell & Co.* v. *Messenger,* 171 Va. 374, 379, 199 S. E. 511: "When damages are claimed in Workmen's

Compensation cases for injuries which may have resulted from one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of evidence.''

■ Mere exertion, which is not greater than that ordinarily incident to employment but which combines with pre-existing disease to produce disability is not compensable as an ''accidental injury.'' *Roccaforte* v. *State Furniture Co.*, 142 Neb. 768, 7 N. W. 2d 656.

In *Good* v. *Pennsylvania Department of Property and Supplies et al.*, 346 Pa. 151, 30 A. 2d 434, it is said: '' * * * the employee's death was caused by a strain upon his already sclerotic arteries, and that strain was the result of a normal amount of exertion necessary for the performance of his duties in the ordinary course of the work in which he was employed. There was no accident, and, therefore, there can be no recovery, because the Compensation Act is what it purports to be—an act to compensate for accidental injuries and not one to insure the life and health of the employee.''

We have repeatedly said that the Workmen's Compensation Act was adopted for the benefit of the employees and their dependents; that it should be liberally construed in order to accomplish this humane purpose. But liberal construction does not mean that the Act should be converted into a form of health insurance.

In *Feitig* v. *Chalkley*, 185 Va. 96, 102, 38 S. E. 2d 73, we said: ''The fundamental purpose of the act is to give compensation for accidental injuries within the hazards of the employment. The Act does not apply to accidents outside of the field of industrial hazard.'' Nor does the Act include compensation for diseases gradually caused or accelerated by employment, unless such acceleration is caused by accidental injury. *Thomson* v. *Amoskeag Mfg. Co.*, 86 N. H. 436, 170 A. 769.

■ Employer's next contention is that claimant is not entitled to recover because he did not file his application for compensation with the Industrial Commission within one year

from the date of the alleged accident as provided by Code, section 65-84.

No application was filed for compensation until September 11, 1950, more than nineteen months after the date of the alleged accident. However, claimant contends that he was mentally incompetent during this period and this incompetency brings his case within the influence of section 65-76, which provides: "No limitation of time provided in this Act for the giving of notice or making claim under this Act shall run against any person who is mentally incompetent or a minor dependent, so long as he has no guardian, trustee or committee."

Claimant stated in his deposition that he became unconscious in the doctor's office on the day of the alleged accident, and continued in such condition until a month or two before he filed the application, but this statement is incredible when weighed with other uncontradicted testimony.

Belcher testified that he visited claimant in his rooming house on the night of February 9, 1949, and that notwithstanding claimant told him he was feeling better, he told him to go to his home in Pulaski and "get straightened out" before returning to work. He did not return to work on Thursday, the next day, but did return on February 11, and worked eight full hours.

J. A. Jones testified that he saw plaintiff in his room on the night of February 9 and on February 11 he saw him at work and he said that he felt fine; on that night they sat together on a bus from Lynchburg to Pulaski; that during these three days he noticed nothing strange about claimant; that he was acting in his usual manner. Later the witness heard that claimant had been paralyzed and he sat up with him one night. Doctor Luttrell said that claimant's mind was "clear" on February 12, 1949.

Doctors Luttrell and Fox testified that when they saw claimant on February 14 he was semi-conscious. He was paralyzed on or after February 17, 1949.

Doctor Fox testified that claimant had improved so much that on April 7, 1949, he was able to come to his office, accompanied by his wife, at which time his blood pressure was practically normal —140/120. His chief complaint on this visit was bilateral conjunctivitis which was treated. "He was still somewhat aphasic, but was mentally alert and seemed to understand clearly."

There is no other evidence tending to show claimant's mental

condition between April 7, 1949, and the time his application was filed on September 11, 1950.

The burden of proving mental incompetency so as to toll the running of the statute, is upon the injured employee. It is not necessary that it be proven that he is a lunatic or that he has been confined in a mental institution, but it must be proven by credible evidence that the injured employee did not have sufficient mind or reasoning powers to comprehend the ordinary affairs of life, or that he had lost control of his mental power to such a degree as to deprive him of sane and normal action. The proof in this case does not measure up to this test.

For the reasons stated the order of the Industrial Commission is set aside and the case dismissed.

*Dismissed.*

WHITTLE, J., concurs in the result.