## 16775

PRICE v. B. F. SHAW CO. ET AL.

(77 S. E. (2d) 491)

*Messrs. Whaley & McCutchen,* of Columbia, *for Appellants,*

*Messrs. Blatt & Fales,* of Barnwell, *for Respondent,* ▮

August 20, 1953.

BAKER, Chief Justice.

Following the death of W. E. Price on March 3, 1952, his widow, the respondent, filed claim with the South Carolina Industrial Commission against B. F. Shaw Company and its workmen's compensation insurer, appellants herein, for benefits under the Workmen's Compensation Law grow-

ing out of the death of her husband. Appellants denied liability to respondent on the grounds that death did not result from an injury by accident arising out of and in the course of the employment within the meaning of the Workmen's Compensation Law, and that respondent had forfeited any right to the benefits of such law by her refusal to permit an autopsy as requested by appellants.

A hearing was held before a Commissioner of the Industrial Commission on April 3, 1952. On June 26, 1952, the Commissioner filed an Opinion and Award against appellants for compensation benefits to respondent for $8,000.00 on the grounds that respondent was the sole dependent of her husband who, while an employee of appellant-employer on March 3, 1952, sustained an injury by accident arising out of and in the course of his employment resulting in his death on that date. Appellants applied to the Industrial Commission for a review of the Opinion and Award. By Opinion and Award of September 9, 1952, the Industrial Commission affirmed the Award of the Hearing Commissioner. Appellants then appealed to the Court of Common Pleas. Such appeal was heard by Honorable J. M. Brailsford, Jr., the presiding Judge, who, on November 29, 1952, filed an Order overruling the exceptions and affirming the Award of the Industrial Commission. From such Order comes this appeal.

The exceptions to the Opinion and Award of the Single or Hearing Commissioner; to the Opinion and Award of the Industrial Commission affirming the Hearing Commissioner; and to the Order of the Circuit Judge overruling the exceptions and affirming the Award of the Industrial Commission, while more in detail, are embraced in the "Questions Involved" as stated in appellants' printed brief and read:

"1. * * *

"2. Did the death of the deceased employee result from injury by accident arising out of and in the course of the employment?"

We have set out only the second question involved, since, in our view of the case, it will be unnecessary to pass upon the other issue.

The limit of our inquiry in workmen's compensation cases appealed from the findings of the Industrial Commission has long been well settled, and is admirably and succinctly stated in *Raley v. City of Camden,* 222 S. C. 303, 310, 72 S. E. (2d) 572, 575, as follows:

"On appeal from the award of the Industrial Commission, the Circuit Court, and this Court, are limited in their inquiry to determine whether there was any competent evidence before the Commission to reasonably support its findings of fact, and whether such findings justified its legal conclusions and decisions. If the findings of fact of the Commission are supported by competent evidence, this court must sustain the Commission. But of course, any finding of fact by the Commission must be founded upon evidence, and cannot rest on surmise, conjecture and speculation." (Citing authorities.)

Such being the law, it is necessary that we summarize the evidence appearing in the record.

The deceased, prior to his death, had been suffering from heart trouble, and having attacks therefrom "off and on" for at least two years, during which period he was receiving treatment from Dr. M. E. Massoud of Pinora, Georgia. Respondent and the deceased were married on October 5, 1951, and came to South Carolina on the 14th of the same month. When they went home (Georgia), we assume on visits, the deceased would go to see Dr. Massoud, which was "some two or three times, to get a check-up, more or less, for colds and different things * * * and I reckon he would, for his heart too."

On March 3, 1952 (the day of his death), at about 4 o'clock A. M., Mr. Price woke up complaining of a pain in his chest, and had shortness of breath. He had a numbness in his arm and hand, and requested the respondent to rub

same, which she did, and she thought he went back to sleep. Later, the respondent got up, cooked breakfast and called him, which was at about six thirty or six forty-five o'clock. The deceased usually ate breakfast, but on this morning he only drank some coffee, and then lay down across the bed and remained there until his "ride" came for him at about seven o'clock. Customarily, after getting up, he did not go back to bed after breakfast—that was something he had never done before since respondent had been married to him. When his "ride" came for him, although it was noticeable that he was feeling bad, he got up, and with the assistance of the respondent, put on his coveralls and jacket, and went out. This was the last time respondent saw the deceased alive.

All of the foregoing facts are reported from the testimony of the respondent; and we now quote from her testimony:

"Q. Mrs. Price, had your husband ever had an attack previously similar to what he had on the morning of his death? A. Yes, sir, very often he complained of shortness of breath and a hurting in his chest.

Q. And you became worried about him? A. Yes, sir.

Q. And you were worried about him that morning? A. Yes, sir.

"Q. And you advised him not to go to work? A. Everytime he would be sick I would ask him to stay off from work and I would take him to a doctor, but he was not a person to complain.

Q. And you asked him not to go on this morning? A. I don't know, but I reckon I did. I always did.

Q. Did you talk to Dr. Massoud? A. Yes, sir, he was the one who told me he had had a heart condition.

Q. He told you he had angina pectoris? A. I don't know whether he named it that or not, but he did say it was a heart condition.

Q. You don't remember whether the doctor told you it was that or not? A. No, sir, I don't remember.

Q. Mrs. Price, you say your husband had had previous attacks, heart attacks and with shortness of breath and so forth? A. Yes, sir.

Q. Had he ever had one as serious as on this particular morning? A. I don't think he had.

Q. And therefore you were more particularly worried about him on that occasion than on other occasions, were you not? A. Yes, sir."

We pause here to comment upon the complete frankness and fairness of the claimant-respondent. She is undoubtedly a good woman.

The deceased resided twenty miles from the place where he worked, and rode in an automobile with three other employes of the same company to and from his work. This is stated in explanation of the testimony of the respondent wherein she spoke of his "ride" coming for him.

One witness, in speaking of the type of work in which the deceased was engaged, said he was a pipe fitter, while another witness said he was a plumber, but this is immaterial. Upon reaching his place of employment, having of course ridden approximately twenty miles thereto, it being Monday morning, the deceased first attended a safety meeting at 8 o'clock, the time at which he and the other employees usually commenced to work. These Monday morning safety meetings lasted from 10 to 15 minutes, and this particular meeting was over at 8:15 o'clock. From the meeting, the deceased and the others who were working beside him went to their tool box which was estimated as being 175 normal steps to 200 yards from where the meeting had been held, picked up their wrenches used in their work, put them on a truck, and walked to where they were going to work, a distance of about 250 steps. These wrenches weighed from 10 to 20 pounds apiece. Preliminary to the actual work where a pipe was being installed in a three foot ditch, skids had to be fetched from a pile located 30 or 40 steps from the ditch, and these employees had to pro-

cure same. In order to properly lay the pipe in the ditch, it was first placed on boards stretched across the ditch, being called skids. These skids varied in weight, from 12 to 22 pounds. Around the area where the deceased and others were working, a strand of rope was stretched about 3 feet from the ground as a safety precaution, and in bringing skids to the ditch, one would pass under this rope. At the time the deceased suffered the attack from which he died, apparently almost instantly, he probably was engaged in carrying a skid to the ditch, and as he reached the strand rope barrier, appeared to sit down, slowly recline, gasp once or twice, uttering a few words and died. This fatal attack occurred at about 8:50 A. M.

There was considerable diversity in the testimony as to whether the deceased had made just one trip to the skid pile or four or five, but evidently he had made more than one trip, when the length of time he had been on the job is considered, being known as a steady workman. However, this is more or less immaterial since he was engaged in his usual work and was not subjected to any unusual strain. And it may here be mentioned that at the safety meeting which the deceased attended, only the usual occurred. There was no rush on the job on this particular morning, the day was a normal work day with no heavy work involved.

Bottomed upon the foregoing facts, although stated a little more favorably to respondent's case than is warranted by the record, hypothetical questions were propounded to Drs. Norman B. Edgerton, L. A. Hartzog and Aubrey D. Gantt, witnesses on behalf of the respondent, and in each instance the doctor replied that the cause of death was coronary thrombosis, and that the work in which the deceased was engaged on the morning of his death accelerated and contributed to such death. Dr. Edgerton later qualified his testimony by stating that *any activity whatsoever* on that morning lessened the chances of the survival of the deceased, and that if he had stayed at home and remained in bed, and had received medical attention, he probably

would be alive. But he also admitted that some people who have such attack, remain in bed, have medical attention, and die. Dr. Hartzog testified that in his opinion, had the deceased not gotten up that morning, but stayed in bed and rested, and performed no manual labor and secured medical aid, he would not have died; and it was further his opinion it was the manual physical work that brought on the acute attack; that in his practice he had treated patients with coronary thrombosis, and always prescribed rest, and some recovered, while others died. Dr. Gantt was the only one of the three physicians testifying who saw the body of the deceased, and from the history given him and a bluish, purple color from right below the shoulders up, he reached the conclusion that the deceased died from coronary thrombosis; that had the deceased stayed in bed that morning and received medical attention, his chances of survival would have been much greater.

In fairness to respondent's counsel, where we stated above that the hypothetical questions propounded to these doctors contained facts a little more favorable to the respondent than the record warrants, it should also be stated that these doctors were examined as witnesses out of the usual order (probably for their convenience) and prior to the majority of the testimony in the case in so far as it related to the activity of the deceased after leaving his home.

In this case the relation of "by accident" to "arising out of and in the course of the employment," resolves itself into the issue whether the deceased, W. E. Price, came to his death as the result of *an accident* arising out of and within the scope of his employment, or was his death due to disease and not compensable under the Act? And this encompasses a distinction which must be drawn in "heart cases" where death ensues, between the usual-exertion test and the unusual-exertion test. In *Kayser v. Erie County Highway Department,* a New York case, 276 App. Div. 789, 92 N. Y. S. (2d) 612, 613, it is stated: "The 'heart cases' where it is usually required to show some special effort as a pre-

cipitating cause of the attack, stand in a class by themselves, but they do so because their generalized nature makes it difficult factually to attribute the attack to the work." And in *Mills v. Conte Christo Corp.*, 10 N. J. Super. 162, 76 A. (2d) 839, and *Neylon v. Ford Motor Co.*, 3 N. J. Super. 56, 80 A. (2d) 235, 236, it is said: "\* \* \* these (heart) cases establish the requirement of proof of unusual strain or exertion in heart disease cases, grounded upon the judicially declared presumption that death from heart disease is ordinarily the result of natural physiological causes rather than trauma or particular effort \* \* \*."

Attention is called to the recently decided case of *Rust Engineering Co. v. Ramsey*, 194 Va. 975, 76 S. E. (2d) 195, and the cited cases therein of *Roccaforte v. State Furniture Co.*, 142 Neb. 768, 7 N. W. (2d) 656, and *Good v. Pennsylvania Department of Property and Supplies*, 346 Pa. 151, 30 A. (2d) 434, 437; and we copy-model from the *Rust-Ramsey case*: The Workmen's Compensation Act was adopted for the benefit of the employees and their dependents, and it should be liberally construed in order to accomplish this humane purpose. But liberal construction does not mean that the Act should be converted into a form of insurance.

In *Raley v. City of Camden, supra,* 222 S. C. 303, 311, 72 S. E. (2d) 572, 575, it is stated:

"We have held in many cases, that in order to obtain an award for any accidental injury resulting from aggravation of heart trouble, there must be a sudden, unusual exertion, violence or strain. *Green v. City of Bennettsville*, 197 S. C. 313, 15 S. E. (2d) 334; *Willis v. Aiken County*, 203 S. C. 96, 26 S. E. (2d) 313; *Sweatt v. Marlboro Cotton Mills*, 206 S. C. 476, 34 S. E. (2d) 762; *Westbury v. Heslep & Thomason Co.*, 199 S. C. 124, 18 S. E. (2d) 668."

While in the case just quoted from it was held that the Industrial Commission was justified, under the evidence, in concluding that the claimant had suffered an accidental in-

jury which was compensable, yet such holding was bottomed upon the fact that claimant had undergone unusual exertion and strain in connection with the new work to which he had been assigned.

In *Green v. City of Bennettsville,* 197 S. C. 313, 15 S. E. (2d) 334, a "heart" and "death" case, a compensation award was affirmed by this Court, the governing and deciding factor being that the deceased was subjected to overexertion and strain in the performance of his duties of employment.

In every case decided by this Court, involving benefits under the Workmen's Compensation Act resulting from heart conditions or other physiological bodily conditions in which award of benefits were adjudged, there was some unusual or extraordinary condition attached to the work environment, or unusual exertion and strain in the performance of the work, or of course, a definite traumatic injury; whereas in those cases in which this Court has denied compensation benefits there has been, in each instance, nothing unusual or extraordinary attached to the work environment, no unusual exertion or strain, and where death or disability would have inevitably resulted from the same cause whether the employee was at work or engagd in other pursuits. In this connection, see *Rivers v. V. P. Loftis Co.,* 214 S. C. 162, 51 S. E. (2d) 510; *Windham v. City of Florence,* 221 S. C. 350, 70 S. E. (2d) 553; *Branch v. Pacific Mills,* 205 S. C. 353, 32 S. E. (2d) 1; *Willard v. Com'rs of Public Works of City of Spartanburg,* 219 S. C. 477, 65 S. E. (2d) 874, 877.

In the last case cited above, *Willard v. Com'rs of Public Works,* it is stated:

"Nor in our opinion was the death of Mr. Willard due to an accident as that term has been defined by this court. *Sweatt v. Marlboro Cotton Mills,* 206 S. C. 476, 34 S. E. (2d) 762; *Willis v. Aiken County,* 203 S. C. 96, 26 S. E. (2d) 313; *Green v. City of Bennettsville,* 197 S. C. 313, 315, 15 S. E. (2d) 334.

"The three above cited cases which the appellant appears to rely upon on this feature of the case, deal with elderly employees—all of whom suffered from myocarditis and other heart diseases—who in the regular performance of their duties died from a heart attack, while greatly over exerting themselves. There is, however, a wide factual distinction between the above three cases and the case at bar."

In the instant case, we are asked to hold that compensation may be had where an employee dies in the regular performance of his duties from a heart attack, although not at the time nor prior thereto doing any work requiring unusual exertion. Here, the employee suffered a heart attack early in the morning of the day on which he died while lying in bed at his home, which attack was evidently a most serious one. Despite this serious attack, and knowing he had "heart trouble", and feeling so bad that he was unable to eat any breakfast, drinking only a cup of coffee, and having to be assisted in putting on his work clothes, he left his home to ride twenty miles to the place of his employment, and there entered upon the performance of his work, dying shortly thereafter and while engaged in the work.

The medical testimony is definitely to the effect that the deceased should have remained in bed on that morning and any physical exertion at all was hazardous and might have precipitated the attack. While the medical testimony warrants the inference that if the deceased had stayed in bed, he might have lived longer, yet he chose not to stay in bed, and it is therefore wholly conjectural whether the heart attack which resulted in his death was precipitated or accelerated by the work, or the exertion incident to getting out of bed, dressing and going to work. All of the doctors testifying in the case were in accord that where a person has a serious heart attack, he should remain in bed.

There is not a scintilla of evidence, as this phrase is construed to mean, see *Bushardt v. United Investment Co.,* 121 S. C. 324, 113 S. E. 637, 35 A. L. R.

637; *Turner v. American Motorists Ins. Co.*, 176 S. C. 260, 180 S. E. 55; *National Bank v. Thomas J. Barrett, Jr., & Co.*, 173 S. C. 1, 174 S. E. 581; and *Jester v. So. Ry. Co.*, 204 S. C. 395, 29 S. E. (2d) 768, that the deceased was subjected to any unusual exertion or strain; and if we depart from the unusual exertion or strain theory which has been consistently applied heretofore, we would, to such extent, be converting the Workmen's Compensation Act into the protection furnished by a life insurance policy where an employee dies while in the performance of his work.

For the foregoing stated reasons, the judgment appealed from is reversed.

Fishburne and Oxner, JJ., concur.

Stukes and Taylor, JJ., dissent.

Stukes, Justice (dissenting).

I regret that I find myself in disagreement with the majority of the court in this important case. I think that we have recently fallen into error and supererogatorily rested affirmance of awards of workmen's compensation in heart cases upon the unnecessary, and therefore superfluous, ground that the claimant or deceased (when death ensued) was undergoing unusual physical strain or exertion in the performance of his duties at the time of the injury or death. There is nothing in the compensation act upon which the requirement can be based; the act simply does not provide for compensation in such cases *only* when the work at which the employee is engaged when stricken shall involve overexertion or unusual strain. Our early analogous cases followed the reasoning and result to which I would return. I refer to *Layton v. Hammond-Brown-Jennings Co.*, 1939, 190 S. C. 425, 3 S. E. (2d) 492, opinion by the present Chief Justice; and *Next of Kin of Cole v. Anderson Cotton Mills*, 1939, 191 S. C. 458, 4 S. E. (2d) 908, opinion by the late Chief Justice Bonham, careful consideration of both of which I respectfully invite; they are convincing to me of the propriety of affirmance of the instant award.

In this case the medical testimony was entirely adequate to support the finding of the commission, affirmed by the trial court, that the lifting and carrying of the heavy "skids" contributed to and accelerated the death of the employee, which I think makes it compensable under the statute. It was over-exertion for the employee in his weakened heart condition although it was part of his usual duties. An internal mishap, such as that suffered by the deceased employee in this case, is no more or less an accident than one with external effect such as a broken arm or leg. It is needless to cite cases that the latter is compensable although claimant may have been predisposed or more susceptible to the injury because of his previous physical condition. The accident to be compensable need only contribute to or accelerate the disabling or fatal condition which results. A common example of internal accidental injury is hernia, which is well described in our comparatively early *Layton case, supra.* It is the unintended and unexpected result which makes an accident in the contemplation of the compensation law. *Hiers v. Brunson Const. Co.,* 221 S. C. 212, 70 S. E. (2d) 211, and authorities there cited.

The view which I advocate appears to be that of the majority of the courts. The following is quoted from 58 Am. Jur., 756, 757, Work. Comp., sec. 255 : "By the weight of authority, the sudden and unexpected breaking of some portion of the internal structure of the body, as in the case of cerebral hemorrhage, apoplexy, hernia, etc., or the failure of some essential function thereof, as in the case of heart failure, paralysis, and similar afflictions, brought about by the exertions of the employee while engaged in the performance of his duties, or by the conditions of the employment, even without any external happening of an accidental nature, is to be regarded as an accidental injury * * * although there are holdings to the contrary. And this is true notwithstanding the workman may have been suffering from a preexisting infirmity which constituted a predisposing cause of such disablement. It is said, in this connection, that

an internal injury which is sudden, unusual and unexpected is none the less accidental because its external cause is part of the victim's ordinary work. And the general rule has been held applicable where such affliction results from blood pressure intensified by vigorous muscular activity, while the employee is performing his work in the usual manner, without any extraordinary effort. It is especially applicable where the disablement or affliction is due to extraordinary effort or over-exertion. * * *"

Numerous supporting decisions are cited in the footnotes to the foregoing text. Among them is *Brown's case,* 123 Me. 424, 123 A. 421, 60 A. L. R. 1293, which contains many earlier, similar authorities. Another well-considered heart case is *Carroll v. Industrial Commission,* 69 Colo. 473, 195 P. 1097, 1098, 19 A. L. R. 107, which likewise supports the general rule of compensability. In it there is quoted the following from 25 Harvard Law Rev. 340: " 'Nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether an injury is unexpected, and so, if received on a single occasion, occurs "by accident," is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.' "

In the very recent Virginia case cited in the prevailing opinion *Rust Engineering Co. v. Ramsey,* 194 Va. 975, 76 S. E. (2d) 195, the court reversed the finding of the Industrial Commission that there had been a causative accident and concluded (as I read the opinion) that claimant's work had nothing to do with his disablement. Under our law, I do not think we can do that in this case because of the substantial medical testimony of causation and the factual finding thereupon of the Commission. That Virginia is not in the minority of States, as apparently are New York and New Jersey, which require unusual exertion for compensa-

tion of internal injuries, or heart cases, is indicated by *Derby v. Swift & Co.,* 188 Va. 336, 49 S. E. (2d) 417, where a syllabus is: "An 'accident' arises out of and in the course of the employment if the exertion producing the accident is too great for the man undertaking the work, even though the degree of exertion is usual and ordinary and the workman had some predisposing physical weakness." Reference may be had to the opinion for citations of supporting decisions of numerous other courts.

Georgia follows the rule to which I subscribe. See *Maryland Casualty Co. v. Dixon,* 83 Ga. App. 172, 63 S. E. (2d) 272, 274, a heart case in which it was said: "An accident arises out of the employment when the required exertion producing the accident is too great for the men undertaking the work, whatever the degree of exertion or the condition of health. * * * Where the employment contributes to the injury, it is an accident under the terms of the law, regardless of whether or not some other factors united with the employment to produce it. * * * The fact that such an attack is made more likely or probable by a pre-existing weakened physical condition is not a ground for denying compensation, if there is sufficient competent evidence that it was traumatic rather than ideopathic in origin." *Mass. Bonding & Ins. Co. v. Turk,* 84 Ga. App. 547, 66 S. E. (2d) 364, 367, was another heart case, from which the following is quoted: "The courts of this State have held that a heart attack, where brought about by the employee's work, such as lifting heavy objects, becoming fatigued, over-exertion, straining, *et cetera,* even though there is no external mishap or unexpected occurrence, is properly found to be an accidental injury, and where disability or death results therefrom, the same is properly found by the board as compensable". In *Griggs v. Lumbermen's Mut. Cas. Co.,* 61 Ga. App. 448, 6 S. E. (2d) 180, 182, claimant suffered a brain hemorrhage and resulting paralysis. In affirming award it was said: "But in this case the claimant had arteriosclerosis at the time he engaged in this

work and lifted these sacks of cement. The rule is that where a previously diseased condition of a claimant for compensation under the workmen's compensation act is aggravated by an injury or accident arising out of and in the course of the employment, and this results in disability to the claimant, there is a compensable injury." Many sustaining authorities from other jurisdictions are cited in the opinion.

Our former decisions, cited in the prevailing opinion, which affirmed denials of awards of the Industrial Commission, the fact-finding body, such as *Willard v. Commissioners of Public Works*, 219 S. C. 477, 65 S. E. (2d) 874, and *Windham v. City of Florence*, 221 S. C. 350, 70 S. E. (2d) 553, are not authority for reversal of the award of the Commission in the case in hand. On the contrary, upon the point of the binding force of the Commission's finding of causal connection here, they are authority for affirmance. And of no present importance are cases such as *Rivers v. V. P. Loftis Co.*, 214 S. C. 162, 51 S. E. (2d) 510, where award was denied because there was no competent evidence of causal connection between the work and the injury or death.

An employer need not become a life insurer of employees weakened by disease, because he may resort to the precaution of medical examinations before and during employment, which it is common knowledge many employers do. The practice is not unlike that of the life insurance companies which require satisfactory reports of medical examinations of applicants before policies of life insurance are issued. Of course, despite this, bad employment risks will occasionally escape detection of the examiners just as bad insurance risks sometimes do. But these are considerations with which the court should not be concerned. The chart for our guidance is the law as written—not as we would add to, or insert in, it. The attention of the legislature was plainly directed to the meaning of the term "accident" as used in the compensation act, at the close of the opinion in the *Layton case*, *supra*, 190 S. C. at page 435, 3 S. E. (2d) 492, and an

amendment of the law was suggested, if desired; but there has been no amendment, which leaves no doubt of the legislative will and intent.

I would affirm the judgment under appeal.

TAYLOR, J., concurs.